**DEPARTMENT OF THE ARMY**
**HEADQUARTERS, U.S. ARMY MATERIEL COMMAND**
**9301 CHAPEK ROAD**
**FORT BELVOIR, VA 22060-5527**

AMCCC

MEMORANDUM FOR Brigadier General William N. Phillips, Commander, U.S. Army Joint Munitions & Lethality Life Cycle Management Command, Picatinny Arsenal, NJ 07806

SUBJECT: Request for Override To Permit Contract Performance of Contract W15QKN-07-D-0018 for the Common Remotely Operated Weapon Station.

1. Reference your request for override provided to us by email dated 2 October 2007.

2. Notwithstanding the pending post-award Government Accountability Office (GAO) protest filed by Recon Optical Inc. (B-310436) approval is hereby granted to commence performance of the contract.

3. Approval to commence performance of the contract is granted pursuant to FAR 33.104(c) and AFARS 5133.104. It is determined that urgent and compelling circumstances that significantly affect the interests of the United States will not permit waiting for the GAO decision. The contract is for the Common Remotely Operated Weapon Station (CROWS) which will provide the *gunner* protection from Improvised Explosive Devices (IED) and snipers. (Emphasis added). These devices pose a great and continuing threat to U.S. and Coalition Forces in Operation Iraqi Freedom and Operation Enduring Freedom. It is clear that a decision not to override the stay in the instant case would significantly delay the fielding schedule; as noted in Mr. Berinato's override request memorandum, these fielding delays will result in a day to day slip from the date work is stopped under the awarded contract through the conclusion of the GAO litigation process, which is expected on or about 2 January 2008. Consequently, the impact of not overriding the stay would be catastrophic as such a delay in providing the CROWS system to the warfighters in Iraq would compromise their safety on the battlefield and result in unnecessary loss of life from IEDs and snipers.

4. The D&F supporting the override request did not specifically address the damages likely to be suffered by the Army in the event the GAO protest is sustained following my decision to override the CICA stay. AFARS 5133.104(c)(2) states that, "The D&F must explain the damage the United States will suffer if continuing performance is not authorized and the damages the United States will suffer if continuing performance is authorized and the protest is sustained."

5. On my behalf, Mr. Daniel Pantzer of my office posed questions to the U.S. Army's Armament Research, Development and Engineering Center (ARDEC) legal office to

obtain additional input for my consideration. Mr. Pantzer thereafter sent me an email, dated 5 October 2007, which conveyed a portion of the responses from the ARDEC legal office, for my review and consideration. (Attachment 1). This input specifically included the following: "If the override is authorized and the protest is sustained. In that circumstance, we would be liable for all costs incurred to date by the Contractor. We will in all likelihood own hardware that we will not be able to assemble into a complete system. To mitigate the losses to the Government, the majority of that hardware could be transferred to another Army program, PM Stryker Brigade Combat Team (SBCT), who could use it to support their efforts. The reason for this is there is an extremely high level of commonality between the currently fielded M151E2 system made by Kongsberg for PM SBCT and the system proposed for the CROWS solicitation. While some administrative costs will be expended, almost all of the hardware could be applied o that program for current production or future improvements. This is a reasonable risk compared to delaying the fielding of this capability."

6. I have considered the damages the Army is likely to suffer in the event GAO sustains the protest following my override approval. I have read, considered, and accepted the statements in the email (Attachment 1). I have considered that, if the protest is sustained, the GAO is likely to recommend that the Army reimburse ROI for the costs of filing and pursuing the protest, including attorneys' fees. However, even if GAO were to sustain the protest, I have concluded that the interests at risk from delay are so great that they overcome the risks to the Army of such an adverse ruling by GAO.

DATE: 17 Oct 2007

Robert J. Parise
ROBERT J. PARISE
Command Counsel

Attachment I

**Parise, Robert CIV USA AMC**

**From:** Pantzer, Daniel Mr CIV USA
**Sent:** Friday, October 05, 2007 9:14 AM
**To:** Parise, Robert SES AMCCC
**Cc:** Faggioli, Vincent SES AMCCC; Meza, Vera Ms CIV USA
**Attachments:** Override Request GAO No B-310436 E- mail #1 of 3; FW: Override Request GAO No B-310436 #3 of 3; FW: Override Request GAO No B-310436 #2 of 3

Mr. Parise,

Below is the post-protest CICA stay override request/ D&F, dated 2 October 2007, from BG William Phillips and Bruce Berinato (PARC, Joint Munitions & Lethality Life Cycle Management Command).

GAO Protest B-310436
Protester: Recon Optical, Inc (also the incumbent under current contract)
Awardee: Kongsberg Defense
Protest Filed: 24 September 2007
GAO Decision Date: 2 January 2008
Contract is for Common Remotely Operated Weapon Stations (CROWS) (remote weapon stations capable of mounting machine guns and include a control system which allows the gunner to remain inside the vehicle protected by armor while firing the weapon)

Contents of Attachments:

- Email 1 of 3: Signed Override Request; Legal Memorandum
- Email 2 of 3: Tab 1, GAO Protest; Tab 2, RFP; Tab 3, SSEB Final Report (Redacted for Protester); Tab 4, SSEB Final Report (Redacted for Awardee); Tab 5, Award Decision Document; Tab 6, SSAC Analysis Briefing Slides; Tab 7, SSEB Members; Tab 8, ?; Tab 9, Protester Debriefing Questions; Tab 10, Memo, Theater Requirements Adjustments/ONS for CROWS
- Email 3 of 3: Tab 11, ATC Final Reports – NVL Report, re: Evaluation of Protester
- Email CROWS amendment 0004: Supplement to Legal Argument and attached RFP Amendment 4; shows that all offerors were informed via RFP amendment of the identity of the SSEB evaluators and their prior involvement in Government Station IPTs – this goes to timeliness of protest allegations of SSEB member bias, and thus bolsters likelihood of agency's success on the merits.

Additionally, further justification, below, from Picatinny Arsenal legal office (we are still awaiting responses to several follow-up questions):

In anticipation of Mr. Parise's questions please see the following:

If this override is not authorized and the protest is eventually dismissed, the damage is that we will have stopped work for 3 months which will result in a minimum fielding delay of 3 months for critical life-saving capability which specifically addresses the top two threats in OIF and OEF. Furthermore, the stop work will result in additional costs to us which will ultimately cause us to reduce the total number of systems we can purchase with the funds available. That reduction in qty will also result in lack of life-saving capability for our Soldiers.

If the override is not authorized and the protest is eventually upheld, we will have a serious situation which will result in the same two issues above but of much greater magnitude. That is, significant delay to fielding systems, lost costs, and therefore a recompete or reevaluation will reduce total system quantities that can be purchased.

If the override is authorized and the protest is sustained. In that circumstance, we would be liable for all costs incurred to date by the Contractor. We will in all likelihood own hardware that we will not be able to assemble into a complete system. To mitigate the losses to the Government, the majority of that hardware could be transferred to another Army program, PM Stryker Brigade Combat Team (SBCT), who could use it to support their efforts. The reason for this is there is an extremely high level of commonality between the currently fielded M151E2 system made by Kongsberg for PM SBCT and the system proposed for the CROWS solicitation. While some administrative costs will be expended, almost all of the hardware could be applied o that program for current production or future improvements. This is a reasonable risk compared to delaying the fielding of this capability.

Daniel Pantzer
Associate Counsel
Protest/Litigation Branch
Office of Command Counsel
HQ, US Army Materiel Command
Ft Belvoir, VA 22060
703.806.8754, FAX: 703.806.8866