

# Override of CICA Stays: A Guidebook

This Guidebook is designed to assist the practitioner in preparing overrides of mandatory CICA Stays, triggered by pre-or post-award protests. It should be used in conjunction with FAR Part 33 and Agency supplements, as well as applicable MACOM bid protest guidance.

# Override of CICA Stays: A Guidebook

## The CICA Stay: An Overview

Under strict time constraints, the Competition in Contracting Act (CICA) provides the protester a powerful right – to stop any Government procurement dead in its tracks. When an Agency is properly notified by the Government Accountability Office (GAO) of a contractor's protest, CICA may require the contracting officer to withhold award of a contract or, if the contract has already been awarded, to suspend contract performance. (See 31 USC § 3553, implemented by FAR 33.103 and 33.104). This event is commonly referred to as a CICA Stay.

Importantly, CICA permits the Agency to override the CICA Stay if certain conditions are met. These conditions are generally laid out in FAR 33.103(f) for Agency protests and FAR 33.104(a) and (c) for GAO protests. (See additional guidance in AFARS §§ 5133.103 & 104).

If a CICA Stay is triggered by a protest, the Agency must decide whether or not to override it. There is only one ground on which a pre-award CICA Stay can be overridden, but two for post-award Stays. With respect to pre-award Stays, the Agency can base its override decision on the ground that contract performance by a particular contractor other than the incumbent is urgent and compelling. With respect to post-award Stays, the Agency can base its override decision on the ground that contract performance by a particular contractor other than the incumbent is either: (1) urgent and compelling, or (2) in the best interests of the United States. For that reason, contracting officers must tailor their Determination and Findings to clearly establish the appropriate rationale for the override.

No matter what the justification, however, it is imperative that any decision to override the CICA Stay requirement be carefully prepared and documented in order to provide the approval authority with the basis upon which to decide, and additionally, in order to withstand intense judicial scrutiny that may follow. An interested party to a protest can challenge an Agency's override decision in the U.S. Court of Federal Claims (COFC). (Prior to 2001, protesters challenging an override of a CICA Stay could seek a temporary injunction from various Federal District Courts. Since January 2001, jurisdiction has been exclusively vested with the COFC. [*See* Administrative Dispute Resolution Act of 1996].

Therefore, it is critically important for Agencies to carefully prepare and document an override decision that can withstand detailed judicial review. This Guidebook is intended to assist the practitioner in preparing an override decision that can withstand such scrutiny.

## The Court of Federal Claims Reviews Overrides, Not the GAO

If the Agency overrides a CICA Stay, an interested party contractor may challenge the override decision by seeking an injunction from the Court of Federal Claims. If issued, the injunction will immediately stop the Agency from proceeding with either contract award or contract performance. Case law shows that the Court will apply a four-part test in reviewing a contractor's request for an injunction.

One of the elements to the four-part test is the likelihood of the plaintiff (protester) succeeding on the merits of the case. The effect is that the Court will look at the Agency's override decision to see if it was unreasonable, arbitrary, or capricious. As mentioned above, the Court determines the reasonableness of the Agency's decision, depending upon the grounds on which the override decision was based – i.e., urgent and compelling or best interests of the United States. To reiterate, it is vital for Contracting Officers to prepare a Determination and Findings document (D&F) that is tailored to the appropriate ground on which the override decision was based.

**PRACTICE TIP:** Although GAO cannot review an override decision, the Agency must immediately notify the GAO of any override action it executes. In the Army, the Contract Appeals Division will inform the GAO of the override.

## Standard of Review

The Court of Federal Claims will review an Agency override decision under the general provisions of the Administrative Procedures Act (APA). In that context, the following questions are asked by the Court:

- Did the HCA[1] act within the scope of his/her authority in overriding the Stay?
- Was the Agency's decision arbitrary, capricious, an abuse of discretion, or not in accordance with the law?
- Was the decision based on all relevant facts *AT THE TIME* the override decision was made?

Recent cases from the Court of Federal Claims add an inquiry as to whether the decision was based on consideration of the relevant factors and whether there has been a "Clear Error of Judgment."

[1] As explained below, within the Army, override authority is vested with the Deputy Assistant Secretary of the Army, Procurement (DASA(P)). The HCA must forward any override request to DASA(P) for approval. (Note: See AFARS 5133.104 for separate AMC approval authority).

**PRACTICE TIP:** The Court of Federal Claims will generally only review the administrative record that was before the override approval authority at the time of the override decision; *NOT* documents prepared after litigation began (i.e., the contracting officer's statement, documents prepared for the purpose of protest litigation), except in very limited situations.

The Department of Justice's Commercial Litigation Branch, Civil Division, provides a trial attorney to represent the interests of the Army, and are responsible for litigating the override decision at the Court of Federal Claims.

## The Purpose of the CICA Stay: Maintain the Status Quo

Understanding the purpose of the CICA Stay will help practitioners in determining whether an override is appropriate in the first instance. Understanding the different grounds on which a CICA Stay may be overridden will help practitioners in ensuring that the override decision is based on adequate grounds, once the decision to override is made.

Congress made changes to the bid protest system under CICA in 1984 to remedy a major loophole in the GAO protest review process. In the past, by the time the GAO reviewed a protest the contract was awarded, the awardee was engaged in performance, and the contract may have already been fully performed. This situation limited the amount of meaningful relief available to a successful protester. Consequently, Congress enacted the *CICA Stay* to maintain the "status quo," pending a thorough review of the acquisition. Thus, when possible, the Agency is generally expected to extend the incumbent's contract rather than make contract award to, or allow performance by, a new contractor. ***Hence, the override decision must provide adequate justification to support contract award to, or performance by, a contractor other than the incumbent – if there is an incumbent.***

**PRACTICE TIP:** The CICA Stay is triggered at different times under different circumstances for protests. GAO protests require notification to the Agency by GAO to trigger a CICA Stay. In Agency protests, notification by the protester to the Agency triggers the Stay. See FAR Part 33 and consult your legal counsel. It is important to note that if, after an override request has been approved and the contract awarded, the same protester files a post-award protest, the post-award protest must be treated as a new action. Thus, the Agency must prepare a new D&F and consider all relevant factors necessary for an override to the most recent protest.

CICA mandates that a CICA Stay, if triggered, is effective until the protest is resolved or an override request is approved by the designated override authority. Congress recognized that there are instances where award or performance of a contract is vital to U.S. interests. Therefore, Congress created exceptions to the CICA Stay for both pre-and post-award protests.

## When Overrides Are Authorized: Pre-Award / Post-Award

Pursuant to CICA, the HCA has the authority to override both pre-and post-award CICA Stays. For procurement conducted by the Army, however, that authority has been withheld, and the DASA(P) is the approval authority for overrides, not the HCA. (See, AFARS Part 5133.104 concerning approval of override decisions for AMC.) ***No contract award may be made or performance begun until the override decision has been approved and GAO is notified IAW FAR 33.104(b)(2) or (c)(3).***

The grounds on which an override decision may properly be based are:

**Pre-Award: Override of a CICA Stay upon a written finding that:**

- Urgent and compelling circumstances which significantly affect interests of the United States that will not permit waiting for the decision of the Comptroller General. *31 U.S.C. § 3553(c)(2)(A)*

**AND**

- The Agency is likely to award the contract within 30 days of the written override determination.

**Post-Award: Override of a CICA Stay upon written finding that:**

- Performance of the contract is in the best interests of the U.S.,

**OR**

- Urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest. *31 USC § 3553(d)(3)(C)(i)*

**PRACTICE TIP:** The protest must be timely and proper notification received by the Army from GAO to trigger the CICA Stay. ***Remember, notification of a GAO protest from the contractor does not trigger the CICA Stay.***

## Urgent and Compelling Circumstances

In preparing the D&F, the practitioner should provide strong justification that: (1) the need for the supply or service is urgent, and (2) a compelling reason exists to award the contract to a contractor other than extending the existing contract with the incumbent – if possible. (As discussed previously, the D&F must state why the incumbent's contract could not be extended pending a GAO decision). Furthermore, the AFARS requires the D&F to explain the damage the United States will suffer if the award is not authorized, and damage the United States will suffer if award is made and the protest is sustained.

In the past, a decision to override on the ground of urgent and compelling circumstances was the more problematic and more likely of the two to be overturned. When they had jurisdiction, the Federal District Courts took two distinct views with respect to this ground. In the minority view, the focus was on whether the type of work or item being procured was urgently needed. The *majority* view, which was the more conservative view and the *one that should still be followed* by practitioners, focuses first on the service or supply to be provided, then shifts to whether "performance by the particular awardee" is urgent and compelling. The mere fact that the incumbent's contract has expired is not sufficient justification to make contract award to, or authorize performance by, another contractor. Now that the Court of Federal Claims is the venue for reviewing Agency override decisions, the continued use of the conservative approach best insures that an override decision will be supported.

Because its jurisdiction over bid protests is relatively recent, case law within the COFC is still emerging. Although the outcome of a COFC decision is dependent on the specific judge hearing the challenge to the Agency override, it behooves the practitioner to ensure that the documentation and rationale supporting the Agency override can withstand intense judicial scrutiny. Provided below are recent COFC cases that provide "lessons learned" and insight regarding what is many times intense judicial scrutiny and review of Agency override determinations.

**Keeton Corrections Inc.** involved an override of a Federal Bureau of Prisons contract for a community correction center. Keeton, the incumbent, was not selected for the contract. Keeton protested and for several months after the protest continued to provide services through a series of sole-source monthly purchase orders. While the protest was pending, the Agency decided to override the CICA Stay on the basis of urgent and compelling circumstances. The Agency asserted that the monthly purchase orders resulted in additional costs. Keeton challenged the override. COFC reviewed the Agency override decision to determine whether it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The Court determined that the D&F and supporting affidavits failed to establish that the Stay would cause additional cost growth. Lastly, the Court observed that the presence of another contractor able and willing to perform does not create urgent and compelling circumstances. ***A key "lesson learned" to take away from this case is the importance of assuring the accuracy of facts used to support the override determination. Loss of credibility with the Court will no doubt undermine any Agency override action.***

The case of **Chapman Law Firm** involved another post-award override. At issue was a Department of Housing and Urban Development (HUD) contract for management and marketing services. HUD asserted urgent and compelling circumstances justified continued performance by the awardee. HUD asserted that the awarded contract included several new requirements not in the incumbent contract and that continued performance by the incumbent would result in a monetary loss if the new requirements were added to the incumbent contract. Again conducting a detailed review of the Agency record, COFC found factual flaws and insufficient evidence to support HUD's override determination. The Court also questioned the objective analysis of HUD's actions. In light of this, the COFC held

HUD's override to be invalid, finding there was no substantial adverse financial or administrative impact attributable to the CICA Stay.

While all cases and their facts are unique, the practitioner should carefully ensure that any facts cited in the D&F for an override request are accurate and support urgent and compelling circumstances. As the above cases demonstrate, care must be taken to assure that the factual justification for an override is accurate and can withstand a rigorous judicial scrub. Once an Agency loses credibility with the Court, the Agency override will likely fail. Consequently, the practitioner must work closely with supporting legal counsel and confirm the completeness and accuracy of the Agency record supporting an override determination.

**PRACTICE TIP:** Always consider seeking senior level Government officials to establish the facts that justify "urgent and compelling interests significantly affecting the interests of the United States." Frequently, based on their judgment and status within the Government, a high ranking official's involvement in the override underscores the importance to the United States of the procurement action. *If an override is truly based on urgent and compelling circumstances, enlisting the support of senior level Government officials should not be difficult.*

## The Best Interests of the United States

This basis for an Agency override is applicable only in post-award situations and for reasons explained below should always be considered as a basis for the override, if at all possible. When confronted with a post-award CICA Stay, an Agency can choose to override the Stay based either on the urgent and compelling ground or on the best interests ground. When using the best interests ground, CICA requires the Agency to make a specific finding that "performance of the contract is in the best interests of the United States."[2]

In recent decisions, the COFC has clearly stated that it has jurisdiction to review Agency override decisions that are based on the "best interests" rationale. Consequently, Army practitioners should prepare the D&F with an eye that the Agency's override decision will be subject to detailed judicial review. Just as with any urgent and compelling override request, practitioners should ensure the D&F includes and accurate and thoughtful analysis of *why extending the incumbent's*

[2] Some Federal District Courts opined that this ground was not subject to judicial review and deferred to the exercise of the discretion of the Agency's decision, thereby leaving the override decision intact, unless there was evidence of Agency bad faith, fraud, or violation of law. District Courts in other jurisdictions, however, did review the Agency's override decision. The focus of the review there was on whether the suspension of the awardee's contract was in the best interests of the United States. This historical point is moot now since jurisdiction on Agency override decision is now vested exclusively with the COFC.

*contract is not in the best interests of the United States,* as well as an analysis of why continued performance is in the best interests of the United States.

Again, provided below are recent COFC cases that provide "lessons learned" and insight regarding the intense judicial scrutiny and review the Court may give Agency override decisions.

In ***University Research Co***,the Health and Humans Services Administration (HHS) issued an override involving a contract award for operation of a clearing house about substance abuse and mental health issues. University Research Co., (URC), the unsuccessful incumbent, claimed HHS failed to properly evaluate its past performance and costs, and argued that it would suffer irreparable injury from terminating its incumbent operation. HHS defended its best interests override decision, asserting that awardee's performance was less costly and a better value than continuing with the incumbent while awaiting a GAO decision. The COFC ruled that URC was likely to win on the merits, that the incumbent would suffer irreparable injury, and that the best interests of the United States favored upholding the integrity of the procurement process. On that last point the Court observed that the public interest is not well served when contracting officials "rush" to save a few weeks and end up delaying contracts by many months. *Again highlighting the importance of Agency credibility, the Court found HHS's override unsupported by the facts and riddled with errors.*

One decision highlighting how the COFC may vigorously review override determinations is found in **PGBA, LLC**. At issue was a contract to transform the DoD TRICARE medical services program. The TRICARE Management Activity (TMA) contended that override of this post-award protest was appropriate for both urgent and compelling reasons as well as being in the best interests of the United States. TMA asserted that without the override, the quality and quantity of medical services would be delayed throughout DoD and that millions of dollars in increased costs would accrue. Following a detailed and exhaustive scrub, the Court specifically ruled that it had jurisdiction to review both urgent and compelling and best interests findings by the Agency. Moreover, the Court noted that the "best interests" of the United States are also served by promoting competition in the contracting process. Ultimately, the Court discovered factual errors in the override determination and concluded that the override was unreasonable.

**PRACTICE TIP – USE THE INCUMBENT:** If the existing contract still meets Agency requirements, avoid a CICA override altogether and extend the incumbent contract. If the existing contract has expired, execute a sole source, interim bridge contract with the incumbent contractor – with the same terms and conditions of the pre-existing contract. Resort to CICA overrides when the incumbent contractor is unwilling or unable to continue performance.

## The Global War On Terror / National Security: The Court of Federal Claims Declines Review of Override.

In an exceptionally important decision for the Department of Defense, the COFC declined to review an override involving the protest of procurements in direct support of the Global War on Terror.

The **Kropp Holdings** case involved a CICA Stay of a Defense Energy Support Center (DESC) contract for supplying fuel at airports and seaports. The new contract provided for the automated credit card purchase of fuel for both air and sea terminals. DESC based its override on "best interests of the United States," since performance of the new contract would be at less cost than extending the existing contract. The COFC observed that the Administrative Dispute Resolution Act of 1996 mandated that it give due regard to the interests of national defense and national security and the need for expeditious resolution of any protest action. The Court also cited to the September 2001 Joint Congressional Resolution authorizing the use of the Armed Forces against terrorism. Against this backdrop, the Court concluded when a procurement is "mission critical" or "mission essential," the interests of national defense and national security must be paramount. Consequently, the Court ruled that under such circumstances, it should defer to the Agency override decision. DESC's override was not further reviewed by the Court.

**PRACTICE TIP:** If your procurement directly supports the GWOT or other vital national security interest, highlight this important fact in your D&F documentation.

## Determination & Findings

A careful reading of its decisions shows that the Court of Federal Claims may well limit its review of the Agency's override decision to the administrative record prepared in support of that action. The D&F, override decision, supporting documents, and Agency approval constitute the Agency record that supports the Agency's override decision. Consequently, it is critical that these documents create a written record, contemporaneous with the Agency's override decision, which contains a comprehensive, detailed, well-reasoned analysis to support the reasonableness of the Agency's decision.

When making the override decision, Agency officials should be mindful that a challenge to an override generally includes a request for a temporary injunction. An injunction, if successful, will prevent the Agency from proceeding with the acquisition and preserve the status quo until the Court decides the merits of the override decision. Consequently, in preparing the documentation to support the override, Agencies should include information that is relevant in the defense of a protester's request for an injunction.

The Court of Federal Claims uses a four-part test, called the "balancing hardship test" in determining whether a temporary restraining order or injunction is warranted. (See reference page for cases) The four factors subject to judicial scrutiny are:

1. Does the Plaintiff have a substantial likelihood of prevailing on the merits?
2. Will the Plaintiff suffer irreparable harm without an injunction?
3. What harm will the Agency suffer if an injunction is issued?
4. Is injunctive relief in the public's interest?

## The Decision To Override The Stay Must Be Supportable.

The D&F in support of an override should focus on whether the protester has a substantial likelihood of prevailing on the merits (Factor 1) – i.e., the bases for the override decision. That factor most will be scrutinized by the Court of Federal Claims, and thus of great concern to practitioners.

Consequently, the Agency must demonstrate that its decision to override the Stay was within its authority and not arbitrary or capricious.

In other words, depending upon the ground used for the override:

- Were there urgent and compelling reasons to override the Stay?

- Was overriding the Stay in the best interests of the United States?

Practitioners should be mindful that the focus by the Court is ***NOT*** whether the source selection decision was reasonable. That goes to the merits of the protest of the contract award, an issue altogether separate from the override decision. Rather, the practitioner must *FOCUS ON THE OVERRIDE DECISION ITSELF,* and provide a detailed, thoughtful, and well reasoned justification to support why the override was either, or possibly both, urgent and compelling or in the best interests of the United States.

Along with fully developing Factor 1, the D&F should also address Factors 2, 3, and 4, which may overlap with Factor 1.

- Explain why circumstances significantly affecting the Agency do not permit waiting for a GAO resolution.

- Address the incumbent contractor's ability/inability to perform during a protest and why one contractor's performance over another is urgent and compelling

## Pre- and Post-Award Protests Involving the Same Acquisition

If a pre-award protest is filed, the Stay is overridden, the contract is awarded, and immediately thereafter a post-award protest is filed, even if by the original Protester, it is important to remember that a second CICA Stay is triggered.

The contracting activity, if it desires to override the second (post-award) Stay, must *prepare and process a subsequent override request.* The first override, pertaining to the pre-award protest does not apply to the post-award Stay!

Although the D&F and other supporting documentation will appear to be similar to that of the first override request, the post-award override packet must be prepared as an independent, stand-alone document and should not be taken lightly by the Agency.

Furthermore, since judges may be somewhat more likely to give more deference to an override based upon the best interests of the Government, this ground for override decision should always, wherever possible, be added in support of the override of post-award Stay, in addition to any urgent and compelling ground.

## Override Decision Summary

Procurement officials must carefully consider whether or not to override a CICA Stay, as the Court of Federal Claims is not hesitant to stop an Agency that acts without adequate factual justification or grounds. Although procurement officials may be frustrated by suspension of an acquisition, Agencies must be mindful that the overall purpose of the CICA Stay is to restrict Agencies from asserting its interests at the cost of full and open competition for the procurement process as a whole. Moreover, that if the CICA Stay is overridden and subsequently the protest is lost, the contract may have to be terminated for convenience, a sometimes very expensive and disruptive proposition for the Agency. Thus, if there is a reasonable risk that the protester will prevail in its protest, the Agency may well be better off accepting the CICA Stay

If, after careful consideration, the Agency determines that an override is necessary, either due to urgent and compelling circumstances or because it is in the best interests of the United States, it is critical that the Agency create detailed, thorough, well-reasoned supporting documentation to support the override decision. While this may take considerable time and effort, it is time well spent. The failure to properly document the Agency's rationale for the override decision may well result in the Court of Federal Claims overturning the Agency's decision. This can result in unnecessary expense, disruption, and embarrassment to the Agency.



## Summary Focus Points

- **Determine whether extending the incumbent contract, or awarding an interim, bridge contract may be accomplished in lieu of an override.**

- **Develop a well reasoned, accurate, and comprehensive D&F with supporting documentation justifying the override decision. Remember, the Court of Federal Claims places great weight on documents developed contemporaneous with the override decision. The Court gives little-to-no weight to *post hoc* evidence and explanations developed during the "heat of litigation." Do not be surprised if the Court declines to supplement or "correct" the Agency record after the override decision is the subject of litigation.**

- **Consider using the mission critical/essential justification in all situations that support National Defense / Security operations, to include procurements in direct support of the Global War on Terror.**

- **Ensure the GAO is immediately notified of any decision to override the CICA Stay of a GAO protest. Contract award or performance may not occur absent such notice. (See FAR 33.104 on GAO notification. Field offices can coordinate individually with CAD on the GAO notification procedures.)**

---

The next two pages present QUICK VIEWS for the practitioner as a means to help organize the Determinations and Findings documents. Following that is additional insight on preparing override documentation, sample D&F language, case citations, and AFARS § 5133.104.